UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

FATE VINCENT WINSLOW                      CIVIL ACTION NO. 14-cv-2836

VERSUS                                    JUDGE FOOTE

N. BURL CAIN                              MAGISTRATE JUDGE HORNSBY

### REPORT AND RECOMMENDATION

**Introduction**

A Caddo Parish jury convicted Fate Vincent Winslow ("Petitioner") of distribution of marijuana. Petitioner was adjudicated a fourth-felony offender and received an enhanced sentence of life imprisonment. The conviction and sentence were affirmed on appeal. State v. Winslow, 55 So.3d 910 (La. App. 2d Cir. 2010), writ denied, 63 So.3d 1033 (La. 2011). Petitioner also pursued a post-conviction application in the state courts, after which he filed this federal habeas corpus petition. For the reasons that follow, it is recommended that his petition be denied.

**Sufficiency of the Evidence**

**A. The Evidence**

Petitioner was charged with distribution of marijuana in violation of La. R.S. 40:966(A)(1). The principal witness was Shreveport Police Officer Jerry Alkire, an experienced member of the vice squad, who was working undercover in an effort to discover prostitution related crimes. He was dressed in casual clothes, wearing an audio transmitter,

and walking on Marshall Street in Shreveport when he encountered two males near the intersection with Fourth Street. One of the men (Petitioner) was black, and the other was white.

Alkire testified that, as he walked by, Petitioner asked him what he was looking for. Alkire said, "I'm looking for a girl." Petitioner said he could get a girl and asked, "What else do you need?" Alkire responded that he was not looking for anything else but, "I'll take some weed if you've got some." Alkire said Petitioner then seemed to get excited and said he could get it for him. They agreed that Petitioner would sell Alkire two dime bags (two $10 bags) of marijuana.

Petitioner asked for the $20, but Alkire said he had been robbed too many times so would not front the money. Petitioner agreed to go get the marijuana in exchange for $25, which included an extra $5 so that he could buy himself beer. Petitioner then walked over to the white male companion and asked for his bicycle, and Petitioner rode away.

Alkire testified that the white man, who he described as described as a dirty and appearing homeless, did not say anything during the negotiations. After Petitioner left, Alkire talked to the white male about "nothing in particular." As they talked, three black males walked toward them. Alkire said he immediately had a bad feeling because of the way they were walking, and he remembered the men yelling at him from a car earlier that evening when he was walking. One of the men asked what Alkire was looking for, and Alkire said he didn't need anything, he was already taken care of. The man then produced a bag of a white substance that appeared to be crack cocaine and asked Alkire if he wanted "any hard."

The white man told them that Petitioner (identified by a street name) had already taken care of Alkire by going to get him some weed. The putative crack seller then asked if Alkire had any money on him. Alkire said that he did not, and when Petitioner returned with the marijuana they were going to Alkire's apartment to get the money. Alkire said he made this claim to avoid a robbery. The men finally left.

Petitioner soon returned on the bicycle and encountered the men as they walked away. He stopped and talked to them for a couple of minutes, then returned to Alkire and said he had the marijuana. Alkire gave him a $20 bill and $5 bill in exchange for the two bags. The serial numbers on the two bills had been recorded by the police. Petitioner asked if Alkire had any other money, and he said he had about $4 left. Petitioner offered to walk Petitioner to his apartment, in exchange for the $4, so that he would not get robbed. Petitioner said that he knew everybody, and they would not mess with Alkire if Petitioner was with him. Alkire agreed.

Alkire said the white male was nearby, but Alkire paid little attention to him as he was focused, first on the three males, and then on Petitioner. The white male never said anything to Alkire or gave him anything, and Alkire never gave the white man any money during the transaction.

As they began walking toward what was purportedly Alkire's apartment, the white male was walking behind them pushing his bicycle. He started complaining that Petitioner had used his bicycle and not given him anything out of the deal. The man kept pestering Petitioner about it, and Petitioner finally said, "Hold on a minute," and turned and walked

up to the white man. Alkire said it looked like Petitioner handed something to the man, but Petitioner's back was to him so that Alkire could not see exactly what happened. He could observe that there was some kind of hand-to-hand transaction.

Petitioner and Alkire walked on, and Alkire soon gave a code word over his audio transmitter to trigger an arrest. There was a slight delay because his partner was making arrangements with patrol officers to stop the car with the three males who offered to sell crack. The partner, Sgt. Scroggins, soon arrived in an unmarked vehicle and arrested Petitioner. Alkire searched Petitioner and found $11 on him, consisting of two $5 bills and one $1 bill. One of the $5 bills was a "marked" bill used by Alkire to make the purchase. After Miranda warnings, Alkire asked Petitioner where the rest of the money went. Petitioner said he did not have a clue what Alkire was talking about because he didn't sell him any dope. He said, "The white boy sold you the dope." "The white boy's got your money."

Alkire said that the only time Petitioner was out of his sight after obtaining the $20 bill was when Petitioner had the hand-to-hand transaction with the white man on the bicycle. The officers soon found that man nearby and asked him if Petitioner had given him any money. The man said, "Yeah, he gave me a $20 bill." There was a hearsay objection to this testimony, but suffice it to say that Alkire found the marked $20 bill on the white man. Tr. 165-90. A forensic chemist with the Crime Lab testified that a chemical analysis of the substance purchased by Alkire tested positive for marijuana. Tr. 209.

    B. Analysis

In evaluating the sufficiency of evidence to support a conviction "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979). The Jackson inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." Herrera v. Collins, 113 S.Ct. 853, 861 (1993).

The state appellate court decided this issue on direct appeal. It conducted a thorough review of the testimony and evidence, set forth the proper Jackson standard, and determined that when the evidence was viewed in a light most favorable to the State, a rational juror could have found that Petitioner distributed marijuana. State v. Winslow, 55 So.3d at 912-15.

Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). Thus a state-court decision rejecting a sufficiency challenge is reviewed under a doubly deferential standard. It may not be overturned on federal habeas unless the decision was an objectively unreasonable application of the

deferential Jackson standard. Parker v. Matthews,132 S.Ct. 2148, 2152 (2012); Harrell v. Cain, 595 Fed. Appx. 439 (5th Cir. 2015).

The evidence was plainly sufficient to justify the guilty verdict and be upheld under Jackson. Petitioner argues that Alkire may have been confused because he was frightened after the three men approached and caused Alkire to fear being robbed. He also argues that the $20 of buy money was found on the white man, and it was not reasonable that Petitioner would have given 80% of the purchase money to the man who merely loaned his bicycle. It is not necessary, however, that the financial choices of a drug seller be reasonable for his conviction to be upheld. There are a number of possible explanations for why Petitioner would have given the man $20, including a mistake or compensating the man for the use of the bicycle on multiple similar occasions. In any event, all of these facts were presented to the jury, and "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." Cavazos v. Smith, 132 S.Ct. 2, 4 (2011). The state court's adjudication of this issue was a reasonable application of Jackson to the evidence, so habeas relief is not available on this claim.

**Multiple Offender Adjudication**

The State sought to enhance the penalty for the marijuana distribution conviction by proving that Petitioner had prior felony convictions. The multiple offender bill charged four prior felonies. Tr. 57. At the hearing, the State produced documents from the prior

convictions, which included fingerprints. An expert witness compared those prints to a set of prints he took from Petitioner in court. The expert testified that they all matched.

The prosecutor agreed that one of the convictions, aggravated burglary from Natchitoches Parish, was not adequately established. Tr. 372. He argued that the evidence was sufficient with respect to the other three convictions, which would render Petitioner a fourth-felony offender and subject him to a mandatory life sentence.

Defense counsel argued that the evidence was insufficient with respect to a Caddo Parish simple burglary conviction from 1994 in Docket No. 170,058. The State ordinarily produces a copy of the bill of information from the prior conviction, and the bill has a set of the defendant's fingerprints on it. With respect to this conviction, the State offered instead an arrest report with fingerprints on it, plus other documents that established there was a conviction in the case. Tr. 368-69.[1] The trial judge ruled that state law allowed consideration of an arrest record in establishing that a prior conviction was linked to the person charged as a multiple offender, and the court adjudicated Petitioner a fourth-felony offender. Tr. 346-48.

---

[1] The State does not ordinarily file trial exhibits with the habeas court, and it appears that the exhibits from the multiple offender proceeding were not filed in this record. The court has reviewed the discovery responses served by the State, which included some of the prior conviction records, but the precise records at issue do not appear to be in the record before this court. It makes perfect sense that exhibits such as guns and drugs are not filed with the habeas court, but it would benefit the parties and the court a great deal if paper exhibits such as the records of this prior conviction were filed when they are at the heart of an issue.

Petitioner argued on direct appeal, as he does here, that there was not adequate evidence of the 1994 simple burglary conviction. The appellate court noted that Louisiana law does not require the State to use a specific type of evidence to carry its burden at a habitual offender hearing; prior convictions may be proved by any competent evidence. The court found the arrest register containing Petitioner's fingerprints, together with related documents that matched the name, arrest date, and other information, could be used in lieu of a fingerprinted bill of information. The evidence was deemed sufficient to prove that Petitioner was the same Fate Vincent Winslow who was convicted of simple burglary in 1994. State v. Winslow, 55 So.3d at 915-16.

This court has noted the lack of certainty regarding whether habeas review requires a prior conviction be proved beyond a reasonable doubt or by some lesser standard of proof. Mitchell v. Goodwin, 2015 WL 5562245, *9 (W.D. La. 2015). No matter the burden, state law is clear that proof of identity can be established a number of ways. State v. Payton, 810 So.2d 1127, 1130 (La. 2002). At least one other Louisiana court has agreed with the appellate court in this case that it "is sufficient to match fingerprints on an arrest register to a defendant, and then match the arrest register to a bill of information and other documents evidencing conviction and sentence." State v. Lomax, 81 So.3d 788, 791 (La. App. 4th Cir. 2011). The state court adjudicated this claim on the merits and found that the evidence was sufficient. Habeas relief is not available because that adjudication was not an unreasonable application of federal law, an unreasonable determination of the facts in light of the evidence, or otherwise a violation of 28 U.S.C. § 2254(d).

**Confrontation Clause Violation**

Agent Alkire testified that after he could not find the $20 bill on Petitioner, he and his partner searched for the white male, who they found a couple of blocks away. Alkire testified:

> I stopped him and told him who I was; identified myself as a police officer; asked him if the defendant had given him any money. And he said, 'Yeah, he gave me a $20 bill.'

Defense counsel immediately objected on grounds of hearsay, and the court responded, "State, ask him another question." The prosecutor then asked Alkire if he was able to locate the money, and Alkire said he did find the $20 bill on the white male. Tr. 186-87.

Petitioner argues that the white male's hearsay statement violated his rights under the Confrontation Clause. He cites Crawford v. Washington, 124 S.Ct. 1354 (2004), which held that the clause bars admission of testimonial statements of a witness who did not appear at trial unless the witness was unavailable to testify and the defendant had a prior opportunity for cross-examination. Only statements that are considered "testimonial" trigger the holding. Statements made by a witness during formal police interrogation are considered testimonial, but statements made to police under circumstances where the primary purpose of the interrogation is to enable police to meet an ongoing emergency may not be testimonial. Michigan v. Bryant, 131 S.Ct. 1143 (2011); Davis v. Washington, 126 S.Ct. 2266 (2006). A statement is likely testimonial when circumstances indicate that there is no ongoing emergency, and the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution. Davis, 126 S.Ct. at 2273-74.

Petitioner presented this claim in his post-conviction application. Tr. 537. The state trial judge addressed this and other claims in a short opinion and found that the claims were "repetitive as well as being unsubstantiated." Tr. 685. Petitioner applied to the appellate court which wrote: "On the showing made, this writ is hereby denied." Tr. 957. The Supreme Court of Louisiana denied writs without comment. Tr. 1333.

The admission of such a statement at trial can warrant habeas relief. Jones v. Cain, 600 F.3d 527, 539 (5th Cir. 2010). But not every technical violation requires the conviction be vacated. Confrontation Clause violations are subject to a harmless error analysis that allows habeas relief on account of constitutional error in a state court criminal trial only if the error had a substantial and injurious effect or influence in determining the jury's verdict. Fratta v. Quarterman, 536 F.3d 485, 507-08 (5th Cir.2008).

The jury did hear the white man's hearsay statement that implicated Petitioner, but the trial judge effectively sustained an objection and required the prosecutor to address how Agent Alkire obtained the $20 bill without mentioning any statements made by the white male. The statement was never mentioned again, and it was not an important part of the State's case. The State offered largely unchallenged testimony from a police officer that he purchased marijuana from Petitioner, who was soon afterward found in possession of some of the buy money. The rest of the money was found in the possession of the only person Petitioner had contact with after the transaction. Considering that evidence, Alkire's brief reference to the man's statement did not have a substantial and injurious effect or influence in determining the verdict. It is a virtual certainty that the same guilty verdict would have

been returned even if Alkire had not quoted the man's statement. Any mistake was harmless, so habeas relief is not available on this claim.

**Ineffective Assistance of Counsel**

    A.  Introduction

Petitioner argues that his trial and appellate counsel rendered ineffective assistance in a number of ways. To prevail on such claims, Petitioner must establish that his counsel's performance fell below an objective standard of reasonableness and that, had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different. Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984).

    B.  Habeas Standard

Each of these claims was summarily denied on the merits during the post-conviction process. Accordingly, 28 U.S.C. § 2254(d) directs that the question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether the determination was unreasonable, which is a substantially higher threshold. Schriro v. Landrigan, 127 S.Ct. 1933, 1939 ( 2007). The Strickland standard is a general standard, so a state court has even more latitude to reasonably determine that a defendant has not satisfied it. The federal court's review is thus "doubly deferential." Knowles v. Mirzayance,129 S.Ct. 1411, 1420 (2009).

"If this standard is difficult to meet, that is because it was meant to be." Harrington v. Richter, 131 S.Ct. 770, 786 (2011). Section 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and reaches

only "extreme malfunctions" in the state criminal justice system. Id. Thus, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id.

### C. Failure to Interview or Call Art Perdue

Petitioner argues that trial counsel failed to interview or call as a trial witness Art Perdue, the white male. Agent Alkire testified that Perdue was found to be homeless, and he was not arrested. Petitioner argues that counsel should have located Perdue, interviewed him, and called him as a witness at trial.

Defense counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 104 S.Ct. at 2066. Failure to interview an eyewitness can be deficient representation. Anderson v. Johnson, 338 F.3d 382, 391 (5th Cir. 2003). But even if there has been defective performance, habeas relief is not warranted unless the poor performance caused prejudice—a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland, 104 S.Ct. at 2068; Anderson, 338 F.3d at 393.

There is no indication that counsel could have even located the homeless Mr. Perdue. Moreover, there is no reason to believe Mr. Perdue would have been willing to testify at trial and say that he—not Petitioner—was the person who committed the felony drug transaction with an undercover policeman. Petitioner does not offer so much as speculation that Perdue would have done so. Because of such speculation, complaints of uncalled witnesses are not favored in habeas review. Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2000). To show

prejudice on such a claim, a petitioner must show that the witness would have testified at trial and would have given favorable testimony. Id. Evans reversed a district court that had granted habeas relief on a similar Strickland claim. The district court was faulted for assuming that witnesses, from whom no affidavits were presented, would have testified favorably for the defense. Similar claims have also been rejected. Cox v. Stephens, 602 Fed. Appx. 141, 146 (5th Cir. 2015) ("Cox has failed, through affidavits or otherwise, to demonstrate that these witnesses would have testified ..."); Gray v. Epps, 616 F.3d 436, 443 (5th Cir. 2010) (petitioner failed to show uncalled witnesses were available to testify where affidavits did not contain statement to that effect). Petitioner has not demonstrated entitlement to relief on this claim.

### D. Crawford Issue

Petitioner complains that appellate counsel failed to raise the Crawford Confrontation Clause claim on appeal. Effective assistance of appellate counsel does not require counsel to raise every non-frivolous ground of appeal available. It requires only that counsel perform in a reasonably effective manner. Green v. Johnson, 160 F.3d 1029, 1043 (5th Cir. 1998), citing Evitts v. Lucey, 105 S.Ct. 830 (1985). When a petitioner claims that counsel omitted an issue that should have been argued, the petitioner must show that had the issue been raised there was a reasonable probability that he would have won on appeal. Smith v. Robbins, 120 S.Ct. 746, 764 (2000); Moreno v. Dretke, 450 F.3d 158, 168 (5th Cir. 2006).

It was explained above that there is little basis for claiming prejudice based on the one-time reference to hearsay. There is only the most remote possibility that appellate counsel could have succeeded in vacating the conviction had this issue been raised. The state court's decision to deny a Strickland claim based on the issue was at most debatable; it was certainly not so incorrect as to be an objectively unreasonable application of Strickland to these facts. This was not one of the extreme malfunctions of the judicial system that requires habeas relief.

### E. No Boykin Objection

One of the prior convictions at issue at the multiple offender adjudication was a 1994 simple burglary conviction from Caddo Parish. Petitioner argues that counsel should have objected to the use of the conviction on the grounds that there was not evidence that he received his Boykin rights before he entered a guilty plea. The record suggests, however, that Petitioner was convicted after a trial so did not enter a guilty plea.

Petitioner points to a page that bears a single docket entry from Case No. 170,058, dated December 9, 1994, that refers to Petitioner appearing with counsel, "having previously pled guilty to the charge," and appearing for sentencing. Tr. 81. But the record also includes a complete set of the minutes for the same case number that suggest Petitioner was convicted after a jury trial on September 13, 1994 and appeared for sentencing on December 9, "having been found guilty of simple burglary." Tr. 101-04. There is also a published appeal from a jury trial conviction for the simple burglary. State v. Winslow, 702 So.2d 22 (La. App. 2d Cir. 1997). The prosecutor at the multiple offender hearing described the conviction by

referring to September 13, 1994 and saying, "He was found guilty on that date for Simple Burglary in Docket No. 170,058, here in Caddo Parish." Tr. 373. The cited documents are part of discovery responses; it does not appear the federal record includes the actual exhibits from the multiple offender hearing, so there is some uncertainty here.

If Petitioner went to trial and was convicted, as the record suggests, then there can be no <u>Boykin</u> issue. If the record is wrong or misinterpreted and Petitioner actually pleaded guilty, then it is Petitioner's habeas burden to show that there was prejudice stemming from trial counsel's failure to raise a valid <u>Boykin</u> objection to the use of the conviction for multiple offender purposes. Petitioner has not pointed to a guilty plea transcript or other evidence to show that he did not receive proper <u>Boykin</u> warnings before he entered a guilty plea to the 1994 simple burglary conviction. Accordingly, he cannot demonstrate prejudice on this claim.

### F. Errors in Motion to Deviate

Counsel filed a Motion to Deviate/Reconsider the Sentence on the grounds that the mandatory life sentence violated the Louisiana Constitution. The motion mistakenly stated that Petitioner's prior convictions were two simple burglaries and possession of Schedule II. Tr. 106-08. His prior convictions were actually two counts of simple burglary and possession of Schedule II.

The motion did include a mistake, but there is no reason to believe that the sentencing court would have varied from the statutorily mandated life sentence if the correct criminal history had been cited in the motion. Petitioner has the burden of showing prejudice to

succeed on a Strickland claim, and there is nothing but unreasonable speculation to offer on this point. The state court's decision to reject this Strickland claim was not objectively unreasonable.

### G. Presence at Post-Trial Motion Ruling

Petitioner complains that his attorney was ineffective because he was not present when the trial court ruled on the Motion to Deviate and Motion for New Trial. The State does not dispute that counsel was not present on that occasion. Petitioner argues that if counsel had been present he could have made "corrective measures," but he offers no specificity. Absent some indication that counsel's presence at the bench rulings on these rather routine motions, which are almost always denied, there is no basis for relief on this claim.

### H. Not Allowing Petitioner to Speak at Sentencing

Petitioner complains counsel did not allow him to speak at the conclusion of "the March 12, 2009 sentencing." The event on that date was actually the multiple offender adjudication hearing. The court heard evidence and argument and took the matter under advisement. Tr. 355-74. There was no point in that hearing at which the law or custom allowed Petitioner to speak to the court. The matter was handled by the attorneys.

The court later found that Petitioner was a fourth-felony offender, and the matter came on for sentencing on March 17, 2009. The judge noted that the mandatory sentence was life, and it was imposed. Tr. 263-65. There were various motions filed that, under state procedure, required the case return again for sentencing on April 20, 2010. The life sentence

was again imposed.  Petitioner did speak to the court at that hearing, and he questioned the denial of his motions without a hearing.  Petitioner also complained about his attorney.  Tr. 297-306.

There is no statutory right of allocution under Louisiana law.  La. C. Cr. P. art 871, comment (c); State v. Hughes, 587 So.2d 31, 44 (La. App. 2nd Cir. 1991); State v. Brown, 440 So.2d 994 (La. App. 3d Cir.1983).  In any event, the life sentence was statutorily required.  Petitioner cannot demonstrate that his sentence would have differed if only his counsel had asked that Petitioner be given the opportunity to address the court at one of these hearings.  Petitioner did speak directly to the judge about several aspects of his case, at length, at the final hearing.  There can be no showing of prejudice with respect to this claim, so the state court's decision was a reasonable application of Strickland. Habeas relief is not permitted.

Accordingly,

**IT IS RECOMMENDED** that Petitioner's petition for writ of habeas corpus be denied.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel

are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 15th day of May, 2017.

Mark L. Hornsby
U.S. Magistrate Judge